## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GALLO GLASS COMPANY,** | 1:16-cv-01446-LJO-BAM |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER RE DEFENDANT'S MOTION TO DISMISS (Doc. 19)** |
| v. | |
| **SPECIAL SHAPES REFRACTORY COMPANY, INC., and NIKOLAUS SORG GMBH & COMPANY KG,** | |
| Defendants. | |

### I. PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Harris to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. Chief District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Chief Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Chief Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout

the nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from inside or outside the Eastern District of California.

## II. INTRODUCTION

Plaintiff Gallo Glass Company ("Gallo") brings this action against Defendants Special Shapes Refractory Company, Inc. ("Special Shapes") and Nikolaus Sorg GmbH & Company KG ("Sorg") for their alleged "construction and design defects which led to the partial collapse of an industrial glass-making furnace owned and operated by Gallo." Complaint ("Compl."), (Doc. 1) p. 2. Gallo claims the failure of the glass-making furnace was due in part to defective refractory materials provided by Special Shapes and by Sorg's negligence in the design and engineering of the furnace.

Special Shapes moves to dismiss Gallo's seventh cause of action for "Product Liability" against Special Shapes under Federal Rule of Civil Procedure 12(b)(6).[1] The Court took the matter under submission on the papers pursuant to Local Rule 230(g). Doc. 28. For the following reasons, the Court DENIES IN PART and GRANTS IN PART Special Shapes' motion to dismiss.

## III. FACTUAL AND PROCEDURAL BACKGROUND

"Gallo Glass Company is a corporation organized under the laws of the state of Nevada with its principal place of business located in Modesto, California." Compl. ¶ 8. Gallo has been "in the business of manufacturing glass since 1958," and has become "an industry leader in wine bottle production." *Id.* ¶ 15. As a "high-volume glass producer," Gallo "operates four industrial glass furnaces at its headquarters in Modesto, California." *Id.* ¶ 18.

"Special Shapes Refractory Company, Inc. is a corporation organized under the laws of the state of Alabama with its principal place of business located in Bessemer, Alabama." *Id.* ¶ 9. Special Shapes "is a manufacturer and designer of refractory materials that holds itself out to the public as the 'leading provider of world class refractory products to furnace operators around the globe.'" *Id.* ¶ 23.

---

[1] All further references to any "Rule" are to the Federal Rules of Civil Procedure unless otherwise stated.

In 2008, Gallo decided to rebuild and expand one of its furnaces, Furnace No. 4. *Id.* ¶ 20. Gallo contracted with Sorg to design, engineer, supervise and audit the Furnace No. 4 project. *Id.* ¶ 22. "As part of the design of the furnace, Sorg calculated and provided specifications for . . . refractory materials," which "are a critical element of furnace construction."[2] *Id.* ¶ 23. Gallo selected Special Shapes to supply the refractory materials required, and the parties subsequently entered into a series of contracts for the Furnace No. 4 project. *Id.*

Gallo and Special Shapes previously entered into a Master Independent Contractor Agreement ("MICA") in 2006, which "set forth general terms and conditions for the relationship and provided that specific projects would be described by subsequent [Project Work Orders ("PWOs")]." *Id.* ¶ 42. The MICA also "provided that Special Shapes would indemnify Gallo against losses from third-party claims." *Id.* ¶ 42.

Gallo and Special Shapes' first PWO for the Furnace No. 4 project commenced on July 31, 2008. *Id.* ¶ 43. Under the PWO, Special Shapes "was to provide a wide variety of refractory materials for use with Furnace No. 4." *Id.* The PWO contained provisions titled "Standard Warranties" and "Performance Guarantees," which warranted that "all Equipment will conform to specifications . . . specified by Gallo," and that "Special Shapes would 'achieve all of the technical specifications agreed to by [Special Shapes] and Gallo.'" *Id.* ¶¶ 43-44. Thereafter, Gallo and Special Shapes entered into four additional PWOs for the Furnace No. 4 project, all commencing on July 3, 2012. *Id.* ¶ 45. Under the terms of the additional PWOs, each of which contained the above mentioned warranty and guaranty provisions, Special Shapes was to "provide various additional refractory materials for use in Furnace No. 4." *Id.*

Special Shapes delivered the refractory materials as per the contract, and the Furnace No. 4 project was completed in 2013. *Id.* ¶¶ 46, 48.

---

[2] Glass manufacturers use furnaces to melt raw materials into molten glass, which is then molded into the end product. Comp. ¶ 16. Sand, one of the raw materials used to manufacture glass, has an extraordinarily high melting point, approximately 1700 degrees Celsius. *Id.* ¶ 17. The intense heat required to manufacture glass is "extremely demanding on the furnace facilities involved. To compensate for this strain, furnaces are built using special refractory materials, which can withstand the incredible levels of heat." *Id.*

3

During the first six months of operation, and after heat-up procedures were complete, Gallo identified certain defects in Furnace No. 4. *Id.* ¶ 51. Then, on February 16, 2016, "an approximately four-foot-high by six-foot-wide section of Furnace No. 4's throat-end wall collapsed inward." *Id.* ¶ 53. Through subsequent analysis, Gallo determined that "over time, the walls had tipped slightly inward. As the walls contracted from the extreme heat, they gradually weakened, and eventually the refractory bricks failed." *Id.*

Gallo claims that:

> the failure of Furnace No. 4 was attributable to both: (a) refractory materials provided by Special Shapes which failed to comply with the necessary specifications called for in Furnace No. 4's design, construction, maintenance, audits, and/or were defective; and (b) negligent acts, errors and omissions of Sorg in designing and re-designing, engineering, supervising, and advising on aspects of and properly accounting for materials used in Furnace No. 4.

*Id.* ¶ 58.

Gallo commenced this action on September 28, 2016. *See* Compl. In its Complaint, Gallo brings eight claims for relief: (1) breach of contract against Special Shapes; (2) breach of warranty against Special Shapes; (3) breach of contract against Sorg; (4) breach of warranty against Sorg; (5) negligence against Special Shapes and Sorg; (6) professional negligence against Special Shapes and Sorg; (7) product liability against Special shapes; and (8) indemnity against Special Shapes and Sorg. *Id.* p. 13-21.

In Gallo's seventh cause of action for "Product Liability," Gallo alleges that the Special Shapes refractory materials incorporated into furnace No. 4 contained defects, which "ultimately caused the furnace to collapse." *Id.* ¶¶ 100-01. Gallo contends that as a result of the defective refractory materials and the furnace's ultimate collapse, it suffered "damages to its property, interruption of operations, costs of repair, loss of income and profits, and costs and expenses." *Id.* ¶ 102.

On December 19, 2016, Special Shapes moved to dismiss Gallo's seventh cause of action for "Product Liability" against Special Shapes. ("MTD") (Doc. 19).  On January 6, 2017, Gallo filed its Opposition to Special Shapes motion. ("Opp'n") (Doc. 24). On January 13, 2017, Special Shapes filed its Reply. ("Reply") (Doc. 27).

4

## IV. **STANDARD OF DECISION**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must, in accordance with Rule 8, allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. "[T]o be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562.

# V. ANALYSIS

Special Shapes argues that Gallo's seventh cause of action for Product Liability fails to state a claim for which relief can be granted because settled law prevents the use of products liability as a substitute for the terms of a contract that was executed in a commercial setting. MTD p. 3-4. Special Shapes also argues that Gallo cannot assert a products liability claim because it has only claimed economic damages, which are barred by the "economic loss rule." *Id.* p. 7. Gallo argues that is may recover on a products liability theory, and that the economic loss rule does not preclude its claim. Specifically, Gallo argues that a contract executed in a commercial setting, alone, does not bar its products liability claim, and Special Shapes cannot show that the parties contracted from positions of relatively equal economic strength, or that Gallo could have negotiated the risk of loss from defects. Opp'n p. 4. Gallo also contends that it has sufficiently pled damages to other property to overcome the economic loss rule. *Id.* p. 6.

    1.    **Viability of Products Liability in the Commercial Context**

Gallo alleges Special Shapes is liable for defects present in refractory materials it supplied for the construction of Furnace No. 4. Compl. ¶¶ 98-102. Special Shapes contends that Gallo is precluded from bringing a products liability claim as a matter of law because "liability for defective products where commercial entities is involved is governed by contract," not tort, and that the "rationale is especially persuasive here, where the product at issue is highly specialized and designed to negotiated specifications." MTD. p. 3-4.

Gallo argues that "the mere fact that parties were involved in a commercial setting does not by itself determine whether strict liability applies." Opp'n p. 2. Gallo appears to concede that the transaction occurred in a commercial setting and that "there was a bargain struck regarding the specifications of the product." *Id.* p. 4. However, Gallo contends Special Shapes must also show that the parties acted from relative equal economic strength and that "Gallo did or could have negotiated away the risk of loss from defects." *Id.* Gallo argues that Special shapes does not and cannot identify facts in

the Complaint to make such a showing. *Id.*

Special Shapes replies that the detailed allegations in the Complaint show that the parties operated from relative equal economic strength and that Gallo could have negotiated away the risk of loss. Reply p. 2-3. Special Shapes contends that Gallo's allegation that "each of the parties is an industry leader with a global market" supports a finding that "the parties operated from 'positions of relatively equal bargaining strength.'" *Id.* p. 2. Special Shapes also argues that "Gallo's recitation of the initial agreements, numerous subsequent agreements and specific provisions such as enhanced warranties," shows that "the parties were keenly conscious of the risk of loss and negotiated . . . numerous times over a period of years to allocate that risk." *Id.* p. 3

"A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." *Greenman v. Yuba Power Products Inc.*, 59 Cal. 2d 57, 62 (1963). However, under California law, "the doctrine of strict liability does not apply to negotiated transactions between large commercial enterprises." *S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1239 (9th Cir. 1982). This prohibition on the use of strict liability in a commercial setting is not absolute, but it is "interpreted liberally" because "strict liability was created to aid injured consumers 'who are powerless to protect themselves.'" *Dep't of Water and Power of City of Los Angeles v. ABB Power T & D Co.*, 902 F.Supp. 1178, 1184 (C.D. Cal. 1995) (quoting *Greenman*, 59 Cal. 2d at 63).

Courts applying California law use a four-part test articulated in *Kaiser Steel Corp. v. Westinghouse Elec. Corp.*, 55 Cal. App. 3d 737, 748 (1976), to determine if strict products liability is available in a commercial setting. *See, e.g., Scandinavian Airlines Sys. v. United Aircraft Corp.*, 601 F.2d 425, 429 (9th Cir. 1979) (adopting four-part *Kaiser Steel* test). "[T]he doctrine of products liability does not apply as between parties who: (1) deal in a commercial setting; (2) from positions of relatively equal economic strength; (3) bargain the specifications of the product; and (4) negotiate concerning the

risk of loss from defects in it." *Kaiser Steel Corp.*, 55 Cal. App. 3d at 748.

The current issue before the Court is whether there are sufficient facts contained in the Complaint to satisfy the *Kaiser Steel* test and bar Gallo's claim. The Complaint discloses the commercial setting of the transactions between the parties: Gallo, Special Shapes, and Sorg are all corporations involved with the purchase, design, and construction of an industrial glass-making furnace for Gallo for the purpose of expanding its glass-bottle manufacturing operations. *See, generally,* Compl. Bargaining for the specifications of the product is also readily apparent from the Complaint. Sorg provided specifications for refractory materials to be used in construction of the furnace, which Gallo utilized in ordering materials from Special Shapes. *Id.* ¶¶ 23-24. Special Shapes, in turn, guaranteed that the refractory materials would adhere to the specifications provided by Gallo. *Id.* ¶¶ 24, 43-44. Absent from the Complaint, however, are any alleged facts concerning the parties' relative economic strength, the extent and nature of any negotiations, or Gallo's ability to negotiate the risk of loss from defective products. *See Int'l Knights of Wine, Inc. v. Call Corp.*, 110 Cal. App. 3d 1001, 1007 n. 1 (1980) (holding that the parties need not actually have negotiated the risk of loss; it is enough if the party seeking the benefit of strict liability *could* have negotiated the risk of loss).

Special Shapes' argument that there is sufficient information in the complaint to satisfy *Kaiser Steel* is without merit. For example, Special Shapes contends that the parties operated from relatively equal economic strength because they are leaders in their respective industries. This fact does not provide any information as to the respective size of the companies, the size of their respective industries, their respective gross sales and profits, or anything else that might demonstrate the parties' respective economic strength. In addition, Special Shapes' argument that entering into multiple contracts containing warranty provisions means that Gallo could have negotiated the risk of loss from defects is also unsupported by any factual allegations. Lacking in the Complaint is any information pertaining to any negotiations conducted between Gallo and Special Shapes. The assurances Gallo requested from Sorg that Special Shapes cites do not demonstrate Gallo's ability to negotiate the risk of loss with

Special Shapes. Accordingly, because the *Kaiser Steel* test cannot be satisfied by facts alleged in the Complaint, Special Shapes' motion to dismiss Gallo's entire seventh cause of action is DENIED.

### 2. **The Economic Loss Rule**

Gallo alleges wide-ranging damages, including "damages to its property, interruption of operations, costs of repair, loss of income and profits, and costs and expenses." Compl. ¶ 102. Gallo also alleges it "was obligated to begin purchasing glass products from outside sources as last-minute pricing in order to meet its existing shipping commitments." *Id.* ¶ 57.

Special Shapes contends Gallo's products liability claim is barred by the economic loss rule because it does not allege the refractory materials caused any physical harm to individuals or other property. MTD p. 5-7. Gallo argues that its losses were not limited to the wall that was composed of refractory materials; rather, the wall's collapse caused "significant damages to the other furnace components and surrounding area, including distinct products not provided by Special Shapes." Opp'n p. 6. Those losses, Gallo contends, constitute damages to other property that takes Gallo's Product Liability claim outside the scope of the economic loss rule.

Special Shapes replies that the damage to other property is not pled in the Complaint. Reply p. 5. It contends that Gallo did not allege that "the wall that collapsed inward was composed of anything other than refractory bricks, or that any element of the furnace was damaged by the failure of the wall." *Id.*

The economic loss rule acts as a dividing line between tort theory and contract theory by requiring "a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004). This means that the type of "[d]amages available under strict products liability do not include economic loss, which includes 'damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits—without any claim of personal injury or damages to other property.'" *Jimenez v. Superior Court*, 29 Cal. 4th 473,

482 (2002) (quoting *Sacramento Regional Transit Dist. v. Grumman Flxible*, 158 Cal. App. 3d 289, 294 (1984)); *NuCal Foods, Inc. v. Quality Eggs LLC*, 918 F.Supp. 2d 1023, 1028 (E.D. Cal 2013) ("purely economic losses are not recoverable in tort"); *Robinson Helicopter Co., Inc.*, 34 Cal. 4th at 987 (purchasers must "recover in contract for purely economic loss due to disappointed expectations."). Accordingly, "[r]ecovery under the doctrine of strict liability is limited solely to 'physical harm to person or property.'" *Jimenez*, 29 Cal. 4th at 482; *see Casey v. Overhead Door Corp.*, 74 Cal. App. 4th 112, 123 (1999) (applying economic loss rule and upholding trial court's exclusion of evidence of economic damages), *disapproved on other ground by Jimenez*, 29 Cal. 4th at 484. Physical harm to property is further limited to "'other property,' that is, property *other than the product itself*," because "[t]he law of contractual warranty governs damage to the product itself." *Jimenez*, 29 Cal. 4th at 483 (emphasis in original).

California courts have recognized that "the economic loss rule does not necessarily bar recovery in tort for damage that a defective product . . . causes to other portions of a larger product . . . into which the former has been incorporated." *Id.* For example, a faulty window, foundation, or furnace may cause damage to the remainder of the house and a purchaser could recover for the damage to the house. *Id.* at 483-84; *Stearman v. Centwex Homes*, 78 Cal. App. 4th 611, 622-23 (2000); *KB Home v. Superior Court*, 112 Cal. App. 4th 1076, 1087 (2003). "As might be expected, cases often turn on the definition of 'product': the smaller component or the assembled whole?" *Great West Cas. Co. v. Navistar, Inc.*, 2015 WL 5103678, at *4 (E.D. Cal. Aug. 31, 2015); *see Jimenez*, 29 Cal. 4th at 483 ("To apply the economic loss rule, we must first determine what the product at issue is.").

For economic loss rule analysis, the product here is Special Shapes' refractory bricks. Thus, if Gallo has sufficiently alleged damage to property other than the refractory bricks, the economic loss rule does not apply, and Gallo may recover for that damage. *See Jimenez*, 29 Cal. 4th at 483.

Gallo argues that oven components not consisting of refractory bricks, the surrounding area, and some other distinct products were damaged. In support of its contention that other property was

1  damaged, Gallo cites to paragraph 101 of the Complaint. The Court also finds paragraph 53 is relevant.

2  Those paragraphs provide, respectively:

>  Despite Gallo's efforts in identifying flaws in the design and construction of Furnace No. 4, on or about the early morning of February 16, 2016, an approximately four-foot-high by six-foot-wide section of furnace No. 4's throat-end wall collapsed inward . . .
>
>  When these refractory materials were reasonably and foreseeably incorporated into the building of furnace No. 4, they warped and ultimately caused the furnace to collapse . . .

Compl. ¶¶ 53, 101.

The Court can reasonably infer from the facts alleged in the complaint that Gallo has suffered damage to its property beyond the products Special Shapes provided. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987) (in evaluating a motion to dismiss, the court "must presume all factual allegation of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party"). Gallo pleads that the furnace was constructed using refractory materials from Special Shapes and equipment provided by Sorg; therefore it is plausible that other components of the furnace were not composed of refractory materials provided by Special Shapes. *See* Compl. ¶¶ 30, 39. Further, it is also plausible that when a four-foot-high by six-foot-wide section of a wall collapses, it would cause damage to other components and nearby property. Therefore, it is plausible that Gallo's "other property" was damaged due to the alleged defects in Special Shapes' refractory materials. Accordingly, because Gallo alleged damages to other property, Special Shapes' motion to dismiss Gallo's seventh cause of action is DENIED as to that damage.

The remainder of Gallo's alleged damages, including interruption of operation, costs of repair, and loss of income and profits, are covered by the economic loss rule and are not recoverable in tort. These damages are "pecuniary damage[s] that occur[] through loss of value or use of the goods sold or the cost of repair together with consequential lost profits . . ." *San Francisco Unified Sch. Dist. v. W.R. Grace & Co.*, 37 Cal. App. 4th 1318, 1342 n.5 (1995); *see also Barrier Specialty Roofing & Coatings, Inc. v. ICI Paints N. Am., Inc.*, 2008 WL 1994947, at *6 (E.D. Cal. May 6, 2008) (holding other

damages not associated with property damage or personal injury are not recoverable in tort); *Carrau v. Marvin Lumber and Cedar Co.*, 93 Cal. App. 4th 281, 295 (2001) (holding recovery for the diminished value of a house in which defective windows were installed is barred by the economic loss rule). Therefore, the economic loss rule bars Gallo, on its products liability claim, from recovering damages other than the alleged physical damage to other property. Special Shapes' motion to dismiss those damages is therefore GRANTED WITHOUT LEAVE TO AMEND.

## VI. CONCLUSION AND ORDER

For the foregoing reasons, the Court DENIES IN PART and GRANTS IN PART Special Shapes' motion to dismiss (Doc. 19). The Court DENIES Special Shapes' motion to dismiss Gallo's entire seventh cause of action, but GRANTS WITHOUT LEAVE TO AMEND Special Shapes' motion to dismiss Gallo's non-recoverable economic losses, as described above. The claim will proceed only as to physical damage to Gallo's "other property," as described above.

IT IS SO ORDERED.

Dated: **January 26, 2017**              /s/ Lawrence J. O'Neill
                                         UNITED STATES CHIEF DISTRICT JUDGE