HUGUENIN KAHN LLP
Edward R. Huguenin, Esq., State Bar No. 173653
Joshua H. Willert, Esq., State Bar No. 232414
Edward R. Huguenin, Esq., State Bar No. 173653
Robert J. Kahn Esq., Esq., State Bar No. 95037
Joshua H. Willert, Esq., State Bar No. 232414
*ehuguenin@hugueninkahn.com*
*jwillert@hugueninkahn.com*
*ehuguenin@hugueninkahn.com*
*rkahn@hugueninkahn.com*
*jwillert@hugueninkahn.com*
3741 Douglas Boulevard, Suite 290
Roseville, CA 95661
Telephone: (916) 367-7098
Facsimile: (916) 367-7491

Attorneys for Defendant/Cross-Claimant/Cross-Defendant
NIKOLAUS SORG GMBH & COMPANY KG

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| GALLO GLASS COMPANY, | CASE NO. 16-CV-01446-LJB-BAM |
| Plaintiff, | DATE: SEPTEMBER 14, 2018<br>TIME: 9:00 A.M.<br>CTRM: 8<br>JUDGE: BARBARA A. MCAULIFFE |
| vs. | |
| SPECIAL SHAPES REFRACTORY COMPANY, INC., AND NIKOLAUS SORG GMBH & COMPANY KG, | **NIKOLAUS SORG GMBH & COMPANY KG'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT** |
| Defendants. | |
| NIKOLAUS SORG GMBH & COMPANY KG, | TRIAL DATE: JUNE 4, 2019 |
| Cross-Claimant, | |
| vs. | |
| SPECIAL SHAPES REFRACTORY COMPANY, INC., | |
| Cross-Defendant. | |

/ / /

/ / /

- 1 -
NIKOLAUS SORG GMBH & COMPANY KG'S NOTICE OF APPLICATION AND APPLICATION FOR
DETERMINATION OF GOOD FAITH SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES
P:\DOCS\RSUI\Gallo Glass Co. v Sorg\Pleadings\GFS Mtn\GFM no opp expected\GFS.MPA [Sorg] no opp.docx

## I. INTRODUCTION

Defendant, NIKOLAUS SORG GMBH & COMPANY KG ("SORG") and Plaintiff, GALLO GLASS COMPANY ("GALLO")[1] have negotiated a settlement of GALLO's claims against SORG. The terms of the settlement provide that it is contingent upon the Court's determination of good faith. (Declaration of Joshua H. Willert (hereinafter "Willert Decl.") at par. 9.) The settlement was reached following: (1) nearly two years of costly litigation; (2) two days of mediation before the Hon. Rebecca Westerfield (Ret.); and (3) several days of post-mediation settlement negotiations between counsel for the Parties. (*Id.* at par. 8-9.) The settlement was entered into in good faith because it resolves highly disputed claims and is the product of substantial settlement negotiations by sophisticated Parties and their counsel. Therefore, SORG requests that the Court find the settlement was reached in good faith pursuant to Code Civ. Proc. § 877.6(a)(1) and (c).

The material terms of the Settlement Agreement and Mutual Release (the "Agreement") include, but are not limited to the following: (i) Sorg's carrier shall pay the sum of $3,932,990.50 to GALLO; (ii) in exchange for payment of such monies GALLO and its carrier, FM Global have agreed to fully release SORG from any and all liability in connection with Furnace No. 4; and (iii) GALLO's agreement to dismiss this action as to SORG with prejudice. In connection with SORG's efforts to meet and confer, the Agreement was made available to all counsel who requested it in this action. Notably, SSRC, the only other named defendant to this action has also recently negotiated a settlement with GALLO and has confirmed they will not oppose this good faith motion.

## II. FACTS

### A. *The Accident:*

GALLO is a glassmaker that has been manufacturing myriad types of glass containers since approximately 1958. SORG is an industrial engineering and design firm specializing in the design of glass container furnaces.

///

---

[1] Hereinafter, GALLO and SORG are collectively referred to as "PARTIES".

In or around 2011, and pursuant to a Master Independent Contractor Agreement (hereinafter "MICA") and a series of subsequent Project Work Orders ("PWO") and/or Change Orders, GALLO engaged SORG to provide certain design, engineering and technical supervision in connection with the re-design, re-construction and expansion of one of GALLO's glass container furnaces commonly known as Furnace No. 4 (hereinafter "PROJECT"). (Declaration of Frederick Aker (hereinafter "Aker Decl.") at par. 3.) Thereafter, on or about March 7, 2014, SORG entered into another agreement with GALLO known as the "On-Demand Services Agreement", whereby SORG agreed to provide certain consulting services and to perform audits and/or service inspections of Furnace No. 4. (Aker Decl. at par. 3.) Pursuant to a MICA and series of subsequent PWO's, GALLO also retained Defendant, SPECIAL SHAPES REFRACTORY CO. (hereinafter "SSRC") to manufacture and deliver certain refractory materials, including but not limited to the bonded AZS 35D blocks and other refractory materials that were used to construct the throat end wall of Furnace No. 4 during the PROJECT. (Aker Decl. at par. 9.)

Construction on Furnace No. 4 was complete, and the furnace was placed into operation in or around April of 2013. (Aker Decl. at par. 10.) On or about July 26, 2013, GALLO formally accepted Furnace No. 4. (*Id*) On or about February 16, 2016, a large section of the throat end wall of Furnace No. 4 collapsed, requiring the furnace to be shut down and placed into an inoperable safe mode (hereinafter "INCIDENT"). (*Id*. at par. 11.) Thereafter, with the assistance of SORG and other vendors, contractors and design professionals, Furnace No. 4 was repaired, and placed back into operation on or about April 13, 2016.

**B.    *The Lawsuit:***

On or about September 28, 2016, GALLO filed a Complaint with the United States District Court, in and for the Eastern District of California stemming from the INCIDENT (hereinafter "COMPLAINT"). (Willert Decl. at par. 3.) The COMPLAINT named SORG and SSRC as the only defendant parties. GALLO's COMPLAINT alleged causes of action against SORG for Breach of Contract, Breach of Warranty, Negligence, Professional Negligence, and Indemnity. The COMPLAINT alleged causes of action against SSRC for Breach of Contract, Breach of Warranty, Negligence, Product Liability, Professional Negligence and Indemnity.

GALLO alleges that the INCIDENT was directly and proximately caused by failures in both the refractory materials provided by SSRC, and the furnace's design, maintenance, auditing, and construction supervision, provided by SORG. (Willert Decl. at par. 5.) As a direct and proximate result of the purported acts and/or omissions by SORG and/or SSRC, GALLO has alleged it sustained myriad damages which include but are not limited to: (i) impairment and degradation of Furnace No. 4 and related property; (ii) furnace repair expenses; (iii) business interruption expenses; (iv) other unspecified expenses and costs in the form of employee compensation, completion of a root cause analysis, and expert costs, and (v) "other" damages purportedly reflecting manufacturing variance costs spanning the Furnace No. 4 shutdown. (Willert Decl. at par. 7, **Exhibit B** thereto.)

SORG and SSRC have filed Cross-Claims against one another which allege Indemnity, Contribution and Declaratory Relief. (Willert Decl. at par. 6.) There are no other parties to this litigation.

### C. The Settlement:

The parties spent two full days mediating this case with Hon. Rebecca Westerfield (Ret.). However, an agreement could not be reached at that time. SORG and GALLO were able to negotiate a settlement agreement in the weeks following this mediation. (Willert Decl. at pars. 8-10.) The settlement was reached out of a desire to compromise and settle all disputes that have arisen out of the INCIDENT and the lawsuit GALLO filed against SORG in order to avoid the burden and expense of protracted litigation, including trial and appeal. (*Id.*)

GALLO has agreed to dismiss the Complaint, with prejudice, as to SORG and to release all of their claims against SORG and its related entities. (Willert Decl. at par. 9.) In return, SORG's insurer has agreed to pay GALLO $3,932,990.50. (*Id.*) However, this settlement was made contingent upon a finding by this Court that the agreement was reached in good faith under Code Civ. Proc. § 877.6 (a)(1) and (c).

In light of the aforementioned settlement, SORG now moves this Court for an Order determining that the settlement was made in good faith, and barring any future actions against SORG relating to the subject.

/ / /

### III. LEGAL ARGUMENT

#### A. This Court Can Determine Whether SORG's Settlement Was In Good Faith:

A good faith determination by the Court is necessary to achieve the goal of Code Civ. Proc. § 877.6, which is to encourage settlement and ensure that settling and non-settling parties pay only their proportionate share of liability. (*In re Heritage Bond Litigation v. U.S. Trust Corp.*, 546 F.3d 667, 680 (9th Cir. 2008) ("By barring future claims for contribution and indemnity arising out of a partial settlement, section 877.6 seeks to encourage settlement and prevent settling and non-settling parties from bearing more than their proportionate share of liability.").) Federal courts may properly determine the good faith of a settlement that resolves state law claims pursuant to Code Civ. Proc. § 877.6, such as those alleged here. (*Mason & Dixon Inter modal, Inc. v. Lapmaster International, LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011).) When a district court sits in diversity, or hears state law claims based on supplemental jurisdiction, it may make a determination of good faith settlement under sections 877 and 877.6. (*See id*; *Daughtry v. Diamond M Co.*, 693 F. Supp. 856, 861 (C.D. Cal. 1988) ("It makes sense to allow federal court litigants to avail themselves of California's good faith settlement scheme in cases where that scheme is invoked in furtherance of rights grounded in California state law.").) Thus, this Court is empowered to evaluate the settlement reached between GALLO and SORG, and determine whether it was achieved "in good faith" under Code Civ. Proc. § 877.6. For the reasons discussed below, a Court order finding this settlement to have been negotiated in good faith is appropriate.

#### B. This Settlement Was Negotiated in Good Faith:

Code Civ. Proc. § 877.6 (a)(1) provides that any party to an action "shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligors...." The determination of good faith by the Court will "bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." (Code Civ. Proc. § 877.6(c); *City of Emeryville v. Robinson*, 621 F.3d 1251, 1265-66 (9th Cir. 2010).) The purpose behind Section 877.6 is to balance the objectives of "equitable sharing of costs among the parties involved" and "the encouragement of

settlement." (*Tech-Bilt, Inc. v. Woodward-Clyde & Assoc.*, 38 Cal.3d 488, 494 (1985).) In determining whether the settlement was negotiated in good faith, the Court should inquire into "whether the amount of the settlement is within the reasonable range of the settling tortfeasor's potential share of comparative liability for the plaintiffs' injuries." (*Id.* at 499.) Whether a settlement is within the "good faith ballpark" is to be evaluated on the basis of information available at the time of settlement, including:

1. A rough approximation of the plaintiff's total recovery and the settlors proportionate liability;
2. The amount paid in settlement;
3. The allocation of the settlement proceeds among plaintiffs;
4. A recognition that the settlor should pay less than if it were found liable at trial;
5. The financial and insurance conditions of the settling defendants; and
6. The existence of collusion, fraud or tortious conduct that may injure the interests of non-settling parties.

As will be discussed below, each of these considerations weighs decidedly in favor of SORG's motion. As such, the negotiated settlement between GALLO and SORG should be deemed to have been reached in good faith under Code Civ. Proc. § 877.6.

    *i.*    *Rough Approximation of Total Recovery/Settlor's Proportionate Liability:*

The amount paid to settle this case with GALLO was appropriate and reasonable given SORG's defenses to both liability and GALLO's damages in this case.

SORG adamantly denies liability to GALLO for the INCIDENT. SORG's experts performed substantial testing and analysis in this case and determined that the sole proximate cause of the INCIDENT were the defective AZS 35D refractory blocks manufactured and delivered by SSRC. (Willert Decl. at par. 12-14.) Thus, SORG was prepared to argue at trial that it has no liability exposure to GALLO for this INCIDENT.

///
///

Second, the operative contract documents between GALLO and SORG contains a broad, limitation on the parties' liability. (Aker Decl. at par. 5-8.) Paragraph 14 (e) of the MICA specifically provides:

> "In no event shall either party be liable for loss of profit, loss of business, loss of business opportunity, loss of market share, damage to the goodwill or reputation of the other or its products, **or for any special, indirect, incidental**, punitive, exemplary or **consequential damage however caused and under any theory of liability whether based on contract (including breach of warranty or representation or other breach of contract), tort (including negligence), or otherwise.**" [Emphasis added.] (See Aker Decl. at par. 5)

This clause has been incorporated into each subsequent contractual agreement with GALLO for the PROJECT, and applies not only to any design services performed by SORG during the PROJECT, but to any audits performed thereafter. (Aker Decl. at par. 6.)

Notably, the foregoing clause bars GALLO from recovering consequential, special or other incidental damages.[2] This is critical, as nearly every category of damages plead by GALLO amounts to either a consequential or special damage claim. Typically, contractual damages are of two types "general" or "direct" damages and "special" or "consequential" damages. (*Lewis Jorge Construction management, Inc. v. Pomona Unified School Dist.* (2004) 34 Cal.4th 960.)[3] *General damages* are those that flow directly and necessarily from a breach of contract, or that are a natural result of a breach. *Special damages* are those that do not arise directly and inevitably from any similar breach of any similar agreement. "Instead, they are secondary or derivative losses arising from circumstances *that are particular to the contract or to the parties.*" (*Id.*) In this case, general damages would *at most* constitute the costs to repair the furnace (which totals $6,830,130). (See

---

[2] A judge from the Eastern District Court of California ruled in the prior lawsuit initiated by Gallo (*E&J Gallo v. Toledo Engineering Co.*) that a consequential damage waiver analogous to this was enforceable and barred most of Gallo's damages.

[3] In tort cases, "special damages" are defined as damages which do not arise from the wrongful act itself, but depend on the circumstances peculiar to the infliction of each respective injury. (*Berry v. Bank of Bakersfield* 177 Cal. 206, 210 (1990).) They typically consist of out-of-pocket losses that can be documented by bills; receipts; canceled checks; and business and wage records, such as medical and related expenses, loss of income, and the loss or cost of services. (*Id.*)

- 7 -
NIKOLAUS SORG GMBH & COMPANY KG'S NOTICE OF APPLICATION AND APPLICATION FOR DETERMINATION OF GOOD FAITH SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES

**Exhibit B** to Willert Decl.) The remaining damages sought by GALLO are unrecoverable because they are special, no matter the cause of action plead (i.e., tort, contract, warranty, etc.).

Given these considerations, the amount paid by SORG to GALLO to resolve this litigation is certainly reasonable. Importantly, a good faith settlement does not call for perfect or even nearly perfect apportionment of liability. (*Abbott Ford, Inc. v. Superior Court*, 43 Cal. 3d 858, 874 (1987).) All that is necessary is that there be a "rough approximation" between a settling tortfeasor's offer of settlement and that tortfeasor's proportionate liability. (*Bay Development, Ltd. v. Superior Court*, 50 Cal. 3d 1012, 1027–1028 (1990).) This test has certainly been met here.

  ii. *Potential Indemnity to Joint Tortfeasors:*

Another key factor is the settling tortfeasor's potential liability for indemnity to joint tortfeasors. (*Long Beach Memorial Medical Center v. Superior Court*, 172 Cal. App. 4th 865, 873 (2d Dist. 2009).) Here, SSRC has filed a Cross-Claim against SORG seeking indemnity and contribution. However, SSRC may only recover indemnity or contribution from SORG to the extent SORG is found to be liable for GALLO's damages. For the same reasons discussed *supra* at Section III, B, i., SSRC's Cross-Claim must fail. SORG's evidence demonstrates that the sole cause of this INCIDENT are the defective AZS 35D blocks manufactured by SSRC. Thus, the evidence demonstrates that the primary cause of this INCIDENT was SSRC and not SORG. SSRC's right to indemnity from SORG is by no means certain.

Second, the consequential damages waiver (discussed *supra*) also bars SSRC's indemnity/contribution claims.

The equitable basis for indemnity is the law of restitution. (*Western Steamship Lines, Inc. v. San Pedro Peninsula Hospital*, 8 Cal.4th 100, 108–109 (1994) (*Western Steamship*).) Equitable indemnity apportions the loss and determines how much each tortfeasor should be responsible to pay based on comparative fault. Indemnification "is not automatically available ... for all tortfeasors who injure the same plaintiff; the courts evaluate the circumstances of the case to determine if its application is appropriate. [Citations.]" (*Id.*) **Notably, "there can be no indemnity without liability."** (*Western Steamship, supra, at p. 115; GEM Developers v. Hallcraft Homes of San Diego, Inc.*, 213 Cal.App.3d 419 (1989); *Allis–Chalmers Corp. v. Superior Court*, 168

Cal.App.3d 1155, 1159 (1985).) The following excerpt from the Supreme Court in *Western Steamship* speaks to the rationale for this limitation:

> "Indemnity does not invariably follow fault; it is premised on a joint legal obligation to another for damages. **Accordingly, as against the indemnitee, the indemnitor can invoke any substantive defense to liability that would be available against the injured party.** The Court of Appeal correctly noted that for certain procedural purposes, such as statutes of limitations, an indemnity claim is an independent action. [citation omitted.] As to matters of substantive law, however, **it is wholly derivative and subject to whatever immunities or other limitations on liability would otherwise be available.**" (*Id.* at 114-115 [emphasis added.].)

*Western Steamship* involved an indemnity action by a cruise ship operator against a hospital after the cruise ship operator had settled a personal injury action in Florida by an injured employee. The *Western Steamship* court found that because MICRA placed a limit on the hospital's liability to an injured party for noneconomic damages, **it also limited the hospital's liability for equitable indemnity**. (*Id.* at 116-118.) The *Western Steamship* court concluded that the purposes of the limitation on liability would be served only if the limitation applied **not only in an action for professional negligence, but also in an equitable indemnity action based on professional negligence**. (*Id.* at p. 112.)

The ruling from *Colich & Sons v. Pacific Bell* 198 Cal.App.3d 1225 (1988) mirrors the court's rationale in *Western Steamship*. In this case an excavation subcontractor (Colich) allegedly struck and damaged an underground telephone cable resulting in an interruption of service to United Air Line (United), a Pacific Bell (Pac Bell) customer that brought a negligence action against Colich for lost business revenues as well as other damages. (*Id.* at p. 1230.) Colich cross-complained against Pac Bell for comparative indemnity, claiming the telephone company's own negligence had been a concurrent cause of United's loss. Pac Bell argued that "as a matter of law [United] could not sue Pac Bell directly for its telephone service interruption under the terms of a limitation of liability tariff filed with the Public Utilities Commission ... and, therefore, Colich's derivative claim for indemnity and contribution was likewise barred." (*Id.* at p. 1231.) The tariff limited liability to $10,000. The Court of Appeal agreed:

> "Although a defendant would ordinarily have a right to file a cross-complaint for indemnity against a concurrent tortfeasor, 'there can be no indemnity without liability.' [Citation.] 'In other words, unless the prospective indemnitor and indemnitee are jointly and severally liable to the plaintiff there is no basis for indemnity.' [Citation.] **But here, Pac Bell cannot be held jointly and severally liable because its liability is strictly limited by the tariff which has the force of law**. To allow Colich to cross-complain for damages for ordinary negligence herein would thwart the undisputed general [Public Utility Commission] policy to limit the telephone utility's liability for ordinary negligence for service interruptions and hinder its rate-making functions." (*Id.* at p. 1236 [emphasis added.])

The rationale from these cases applies to SSRC's Cross-Claim for indemnity/contribution against SORG. Under the foregoing authority at a minimum, SSRC's efforts to seek indemnity from SORG must fail.

    *iii.*   *Amount Paid In Settlement:*

Notwithstanding the very robust arguments SORG has in opposition to GALLO's theories of liability and damages (discussed *supra* at Section III, B, i.), SORG's insurer has agreed to pay GALLO $3,932,990.50. This sum is not insignificant and certainly weighs in favor of finding that the settlement was reached in good faith.

    *iv.*   *Allocation of Settlement Amongst Plaintiffs:*

No allocation is necessary here. GALLO is the sole Plaintiff in this case, and will receive 100% of SORG's settlement monies.

    *v.*   *Recognition that Settlor Should Pay Less Than at Trial:*

This consideration favors SORG's Motion. This is especially true given the strong defenses to GALLO's liability and damage contentions (discussed *supra* at Section III, B, i).

    *vi.*   *Financial Insurance Conditions of Sorg:*

SORG ostensibly had insurance up to $25,000,000.[4] (Willert Decl. at par. 11.) This insurance was divided between one professional liability ("PL") policy, and four layers of excess. The first

---

[4] Importantly, the second layer of excess insurance denied coverage for the INCIDENT.

layer of insurance had policy limits of $5,000,000 per occurrence. However, this PL policy of insurance had "burning limits".[5] Further, there were coverage disputes implicating this first PL layer of insurance. Even so, given SORG's defenses to liability and damages, SORG was of the opinion that the depleted PL policy was enough to cover SORG's potential liability at trial. Ultimately, GALLO made a policy limits demand to SORG under the PL policy. As stated above, this offer was ultimately accepted and SORG's carrier agreed to pay $3,932,990.50 to GALLO to settle this case. The fact that this PL policy was diminishing as the case progressed was a major consideration that motivated GALLO to agree to the terms of this settlement. This consideration favors SORG's Motion.

   *vii.* *Existence of Collusion, Fraud, or Tortious Conduct:*

   There is no evidence of collusion, fraud or other tortious conduct either by GALLO or SORG in connection with this settlement. (Willert Decl. at pars. 8-12.) The agreement was reached after nearly two full years of litigation, and two full days of mediation.

  **C.** **Because No Opposition is Anticipated, Only a "Barebones" Showing of Good Faith is Required:**

   As discussed *supra*, *Tech-Bilt*, *supra*, 38 Cal. 3d at 499 sets forth a list of factors for courts to consider in determining a motion for good faith settlement. However, in *City of Grand Terrace v. Superior Court,* 192 Cal. App. 3d 1251 (1987), the Court of Appeal held that analysis of the *Tech-Bilt* factors is not required unless the motion is opposed. (*Id.* at 1261.) In the present case, there have been no indications that any party intends to oppose SORG's Motion. (Willert Decl. at par. 15.) Although evidence should be submitted with the motion to establish evidentiary facts from which the court may determine good or bad faith, when the motion is made by the settling defendant, a "barebones" motion which sets forth the ground of good faith, accompanied by a declaration which sets forth a brief background of the case is sufficient, because the burden of proof rests with the opposing party to demonstrate a lack of good faith. (*Id.*; Code Civ. Proc. § 877.6(d).) If the motion

---

[5] This means that every dollar spent to defend SORG depletes the amount of money remaining on the policy that may be paid out to settle a claim, or satisfy a judgment.

is contested by a non-settling party, then the moving party can file responsive counter-declarations to negate the lack of good faith asserted by the contesting party. (*Id.* at 1261-62.)

Prior to filing the Motion, SORG met and conferred with counsel for the parties in this action by notifying them of the settlement, offering to make the Agreement available for their review, and asking anyone who intended to oppose the Motion to notify counsel for SORG. (Willert Decl. at par. 14.) As of the filing of this Motion, no party has indicated an intent to oppose the Motion. (*Id.*) SSRC (the only defendant party) expressly agreed they will not oppose this Motion as they have also negotiated a settlement agreement with GALLO. (Willert Decl. at par. 15.) Given the foregoing (discussed in Section III. B *supra*), SORG's evidence in support of this Motion clearly demonstrates that the settlement with GALLO was reached in good faith.

## IV. CONCLUSION

The decisions in *Mason and Dixon Intermodal, Inc., supra,* 632 F.3d at 1060, and *Federal Sav. and Loan Ins. Corp. v. Butler* 904 F.2d 505, 511 (9th Cir. 1990), together provide that federal courts have discretion to determine that a settlement is in good faith pursuant to the provisions of Code Civ. Proc. § 877. SORG respectfully requests that at its earliest convenience the Court enter an order approving the settlement and:

1. Determining and declaring that the proposed settlement entered into between SORG and GALLO is made and entered into in good faith; and

2. Barring any party from maintaining or making any future claim(s) against SORG for equitable comparative contribution or for partial or complete comparative indemnity, under common law or statute, or based upon principles of comparative negligence or comparative fault based upon the claims at issue in this matter.

Dated: July 16, 2018                HUGUENIN KAHN LLP

By: _____
Edward R. Huguenin, Esq.
Robert J. Kahn Esq., Esq.
Joshua H. Willert, Esq.
Attorneys for Defendant/Cross-Claimant/Cross-Defendant
NIKOLAUS SORG GMBH & COMPANY KG

NIKOLAUS SORG GMBH & COMPANY KG'S NOTICE OF APPLICATION AND APPLICATION FOR DETERMINATION OF GOOD FAITH SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES

# PROOF OF SERVICE

I am employed in the County of Placer, State of California. I am over the age of 18 and not a party to the within action. My business address is 3741 Douglas Boulevard, Suite 290, Roseville, CA 95661.

On July 16, 2018, I served the within document(s) described as:

**NIKOLAUS SORG GMBH & COMPANY KG'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT**

on the interested parties in this action as stated on the attached mailing list.

[X] (BY CERTIFIED MAIL) By placing a true copy of the foregoing document(s) in a sealed envelope addressed as set forth on the attached mailing list. I placed each such envelope for collection and mailing following ordinary business practices. I am readily familiar with this Firm's practice for collection and processing of correspondence for mailing. Under that practice, the correspondence would be deposited with the United States Postal Service on that same day, with postage thereon fully prepaid at Roseville, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[X] (BY REGISTERED MAIL) By placing a true copy of the foregoing document(s) in a sealed envelope addressed as set forth on the attached mailing list. I placed each such envelope for collection and mailing following ordinary business practices. I am readily familiar with this Firm's practice for collection and processing of correspondence for mailing. Under that practice, the correspondence would be deposited with the United States Postal Service on that same day, with postage thereon fully prepaid at Roseville, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[X] (BY UNITED STATES DISTRICT COURT CM/ECF SYSTEM) Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

[X] (BY PERSONAL SERVICE) By causing delivery by P&B Collection Services, I delivered a true copy of the foregoing document(s) in a sealed envelope by hand to the offices of the below addressee(s).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 16, 2018, at Roseville, California.

_____  _____
Ashley Jackson                                          (Signature)
(Type or print name)

## SERVICE LIST

| | |
|---|---|
| Colin Munro, Esq.<br>**Carlson Calladine & Peterson LLP**<br>353 Sacramento Street, 16th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 391-3911<br>Facsimile: (415) 391-3898<br>cmunro@ccplaw.com<br><br>**Attorney for Plaintiff Gallo Glass Company**<br><br>**(SERVED VIA UNITED STATES DISTRICT COURT CM/ECF SYSTEM)** | Martin H. Myers, Esq.<br>Gretchen Hoff Varner, Esq.<br>Nicholas Lampros, Esq.<br>**Covington & Burling LLP**<br>1999 Avenue of the Stars, Suite 3500<br>Los Angeles, CA 90067<br>mmyers@cov.com<br>ghoffvarner@cov.com<br>nlampros@cov.com<br>Telephone: (424) 332-4800<br>Facsimile: (424) 332-4749<br><br>**Co-Counsel for Plaintiff Gallo Glass Company**<br><br>**(SERVED VIA UNITED STATES DISTRICT COURT CM/ECF SYSTEM)** |
| Robert C. Hendrickson, Esq.<br>**Duane Morris LLP**<br>Spear Tower<br>One Market Plaza, Suite 2200<br>San Francisco, CA 94105<br>Telephone: (415) 957-3125<br>Facsimile: (415) 354-3452<br>rchendrickson@duanemorris.com<br><br>**Co-Counsel for Nikolaus Sorg GMBH & Company KG**<br><br>**(SERVED VIA UNITED STATES DISTRICT COURT CM/ECF SYSTEM)** | Lisa M. Cappelluti, Esq.<br>Lisa G. Schlittner, Esq.<br>Robert C. Chojnacki, Esq.<br>**Lorber, Greenfield & Polito, LLP**<br>150 Post Street, Suite 700<br>San Francisco, CA 94108<br>Telephone: (415) 986-0688<br>Facsimile: (415) 986-1172<br>lgs@lorberlaw.com<br>LCappelluti@lorberlaw.com<br>lschlittner@lorberlaw.com<br><br>**Counsel for Special Shapes Refractory Company, Inc.**<br><br>**(SERVED VIA UNITED STATES DISTRICT COURT CM/ECF SYSTEM)** |

| | |
|---|---|
| Matthew T. Hawk, Esq.<br>Amy K. Alexander, Esq.<br>**Gordon Rees Scully Mansukhani LLP**<br>275 Battery Street, suite 2000<br>San Francisco, CA 94111<br>(415) 986-5900; Fax: (415) 986-8054<br>wpeters@grsm.com<br>mhawk@grsm.com<br>aalexander@grsm.com<br><br>**Co-Counsel for Special Shapes Refractory Company, Inc.**<br><br>**(SERVED VIA UNITED STATES DISTRICT COURT CM/ECF SYSTEM)** | CB Engineering, Inc.<br>420 Downey Ave.<br>Modesto, CA 95354<br><br>**(VIA CERTIFIED/RETURN RECEIPT MAIL)** |
| Stahlbau Hoyerswerda GmbH<br>Str. zum idustriegelande 27<br>02977 Hoyerswerda, Germany<br><br>**(VIA REGISTERED MAIL)** | Marjan Polak S. P.<br>Storitve in inzeniring v steklarski<br>in procesni industriji<br>Marno 12, SI-1431 Dol pri hrastniku<br><br>**(VIA REGISTERED MAIL)** |
| Utah Refractories Corporation<br>2200 N 1200 W Lehi<br>UT 84043<br><br>**(VIA CERTIFIED/RETURN RECEIPT MAIL)** | Lilja Construction<br>229 Rickenbacker Circle<br>Livermore, CA 94551<br><br>**(VIA CERTIFIED/RETURN RECEIPT MAIL)** |
| Hotworks<br>16830 Ventura Blvd., Ste 360<br>Encino, CA 91436<br><br>**(VIA CERTIFIED/RETURN RECEIPT MAIL)** | Fosbel Inc.<br>818 West Seventh Street, Ste 930<br>Los Angeles, CA 90017<br><br>**(VIA CERTIFIED/RETURN RECEIPT MAIL)** |
| Harbison Walker International, Inc.<br>c/o Custodian of Records, CSC-Lawyers Incorporating Service<br>2710 Gateway Oaks Drive, Ste 150N<br>Sacramento, CA 95833<br><br>**(VIA CERTIFIED/RETURN RECEIPT MAIL)** | Dismatec LTD<br>106 Holme Lane<br>Sheffield, S6 4JW<br><br>**(VIA PERSONAL SERVICE BY CAUSING DELIVERY BY P&B COLLECTION SERVICES)** |
| Silman Venture Corporation<br>1960 Parsley Dr.<br>Brentwood, CA 94513<br><br>**(VIA CERTIFIED/RETURN RECEIPT MAIL)** | |

P:\DOCS\RSUI\Gallo Glass Co. v Sorg\MASTER TEMPLATES\PROOF OF SERVICE (byCertifiedMail.PersonalSevice).docx